**In re TOMLAN, Betty, Debtor.**

**Bankruptcy No. 84–01968–408.**

United States Bankruptcy Court,
E.D. Washington.

Aug. 1, 1988.

the Internal Revenue Service ("IRS") has not timely filed a proof of claim.

## THE FACTS

The debtor, Betty Tomlan, filed her petition for relief under Chapter 13 of the Bankruptcy Code on September 19, 1984. 11 U.S.C. section 1301 *et seq.* The notice sent to her creditors provided that proofs of claim were to be filed on or before January 16, 1985.

Tomlan proposed a plan which provided for payments to the IRS of $39,975, to a secured creditor of $4,200, and to the debtor's attorney for attorney's fees. Payments to other creditors would be paid outside the plan. The plan provided that section 507 priority claims were to be paid in full in deferred cash payments.

The IRS filed its proof of claim in the total amount of $49,277.70 on January 21, 1985, five days after the last date to file a proof of claim. The proof of claim filed by the government was divided into three separate claims consisting of a secured claim, an unsecured priority claim, and a general unsecured claim.[1]

Tomlan filed an Objection to the IRS claim on May 31, 1985. The debtor alleged that the amount claimed by the IRS was incorrect and that part of the secured claim would be unsecured. On June 3, 1985, Tomlan filed a Modified Plan which provided that the debtor would pay 100% of "allowed claims" to the IRS.

On June 13, 1985, after filing both the Objection to Claim and the Modified Plan, the debtor filed an Amended Objection to the IRS proof of claim. In the Amended Objection, the debtor alleged, among other things,[2] that since the proof of claim was

Allan Galbraith, Wenatchee, Wash., for debtor.

Michael Kovach, Jr., U.S. Dept. of Justice, Washington, D.C., Mike McMahon, Seattle, Wash., for I.R.S.

## MEMORANDUM DECISION

JOHN M. KLOBUCHER, Bankruptcy Judge.

The issue in this case is whether a Chapter 13 debtor is entitled to the discharge of an 11 U.S.C. section 507 priority debt when

1. The proof of claim indicates a secured claim of $14,373.83, an unsecured priority claim in the amount of $29,833.55, and an unsecured general claim in the amount of $5,070.32.

2. In addition to objecting to the timeliness of the IRS proof of claim, the debtor alleges that the Notice of Tax Lien was filed in the wrong county which would result in the claim being unsecured and that the value of the collateral available to secure the taxes was considerably less than the amount claimed by the IRS as secured under 11 U.S.C. section 506(c). The

IRS in its response contends that a determination of the validity and extent of the IRS lien requires an adversary proceeding pursuant to Fed.R.Bankr.P. 7001(2). An adversary proceeding has not been filed. Since this Court is ruling that a Chapter 13 debtor must provide for the full payment of tax claims absent an agreement by the IRS to the contrary, the result in this case would not change were the debtor to be successful in challenging the secured status of the IRS.

filed after the January 16, 1985 deadline, the IRS claim should be disallowed. The IRS responded to the debtor's Amended Objection. In order to delineate the issues, the debtor filed a Second Amended Objection on August 2, 1985, reiterating the debtor's objection to the timeliness of the filing of the IRS claim and asserting that the entire claim should be disallowed and discharged upon completion of the debtor's plan.

## DISCUSSION

The discharge provisions in a Chapter 13 case are set forth in 11 U.S.C. section 1328.[3] With the exception of two types of debt not relevant to this case,[4] section 1328(a) provides for the discharge of all debts which are either "provided for by the plan or disallowed under section 502." 11 U.S.C. section 1328(a). Thus, the code section sets forth two conditions, either of which, when met, will result in the IRS claim being discharged. If the IRS claim is either "provided for by the plan" or "disal-

lowed under section 502," the claims of the government will be discharged upon the debtor's completion of her plan. The IRS admits that its claim was not timely filed under Bankruptcy Rule 3002(a). Nevertheless, the IRS asserts that its claim will not be discharged.

### Was the IRS Claim Disallowed Under Section 502?

The filing of proofs of claims is provided for in 11 U.S.C. section 501.[5] While the section states who may file claims, it does not establish what makes the filing of a proof of claim timely. In a Chapter 13 case, pursuant to Bankruptcy Rule 3002(c),[6] a proof of claim must be filed within 90 days of the first meeting of creditors. Fed.R.Bankr.P. 3002(c). Although Rule 3002(c)(1) permits the Court to extend the time for filing a claim by the United States on motion of the United States before the expiration of the time and for cause shown, the Court does not have dis-

---

**3.** *Section 1328. Discharge* provides in relevant part:

(a) As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—
    (1) provided for under section 1322(b)(5) of this title; or
    (2) of the kind specified in section 523(a)(5) of this title.
. . . .

**4.** The discharge provided in 11 U.S.C. section 1328 is a discharge of all debts except alimony, maintenance, or support, and certain long-term obligations specifically provided for under the plan.

**5.** *Section 501. Filing of proofs of claims or interests.*

(a) A creditor or an indenture trustee may file a proof of claim. An equity security holder may file a proof of interest.
(b) If a creditor does not timely file a proof of such creditor's claim, an entity that is liable to such creditor with the debtor, or that has secured such creditor, may file a proof of such claim.
(c) If a creditor does not timely file a proof of such creditor's claim, the debtor or the trustee may file a proof of such claim.

(d) A claim of a kind specified in section 502(e)(2), 502(f), 502(g), 502(h) or 502(i) of this title may be filed under subsection (a), (b), or (c) of this section the same as if such claim were a claim against the debtor and had arisen before the date of the filing of the petition.

**6.** *Rule 3002. Filing Proof of Claim or Interest* provides in part:

(a) *Necessity for Filing.* An unsecured creditor or an equity security holder must file a proof of claim or interest in accordance with this rule for the claim or interest to be allowed, except as provided in Rules 1019(4), 3003, 3004 and 3005.
(b) *Place of Filing.* A proof of claim or interest shall be filed in accordance with Rule 5005.
(c) *Time for Filing.* In a chapter 7 liquidation or chapter 13 individual's debt adjustment case, a proof of claim shall be filed within 90 days after the first date set for the meeting of creditors called pursuant to section 341(a) of the Code, except as follows:
    (1) On motion of the United States, a state, or subdivision thereof before the expiration of such period and for cause shown, the court may extend the time for filing of a claim by the United States, a state, or subdivision thereof.
. . . .

cretionary authority[7] to enlarge the time after the period has expired. Fed.R. Bankr.P. 3002(c)(2) and 9006(b)(3); *In re Chirillo*, 84 B.R. 120 (Bankr.N.D.Ill.1988). Such a rule is necessary for the efficient administration of the estate because it establishes a specific time after which the debtor, creditor, trustee, and the Court know that the last claim has been filed. The IRS did not move for an extension of time to file its claim and acknowledges that its proof of claim was filed after the January 16, 1985 bar date. Therefore, under Rule 3002(c), the IRS claim, which is untimely, cannot be allowed. However, whether the IRS claim should be discharged because it is not allowed is a different issue.

■ Section 502[8] provides for both allowance and disallowance of claims. Un-

7. *Rule 9006. Time* provides in part:

. . . . .

(b) *Enlargement.*

. . . . .

(3) *Enlargement Limited.* The Court may enlarge the time for taking action under Rules 1006(b)(2), 3002(c), 4003(b), 4004(a), 4007(c), 8002, and 9033, only to the extent and under the conditions stated in those rules.

. . . .

8. *Section 502. Allowance of claims or interests.*

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured;

(2) such claim is for unmatured interest;

(3) if such claim is for a tax assessed against property of the estate, such claim exceeds the value of the interest of the estate in such property;

(4) if such claim is for services of an insider or attorney of the debtor, such claim exceeds the reasonable value of such services;

(5) such claim is for a debt that is unmatured on the date of the filing of the petition and that is excepted from discharge under section 523(a)(5) of this title;

(6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds—

(A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—

(i) the date of the filing of the petition; and

(ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus

(B) any unpaid rent due under such lease without acceleration, on the earlier of such dates;

(7) if such claim is the claim of an employee for damages resulting from the termination of an employment contract, such claim exceeds—

(A) the compensation provided by such contract, without acceleration, for one year following the earlier of—

(i) the date of the filing of the petition; or

(ii) the date on which the employer directed the employee to terminate, or such employee terminated, performance under such contract; plus

(B) any unpaid compensation due under such contract, without acceleration, on the earlier of such dates; or

(8) such claim results from a reduction, due to late payment, in the amount of an otherwise applicable credit available to the debtor in connection with an employment tax on wages, salaries, or commissions earned from the debtor.

(c) There shall be estimated for purpose of allowance under this section—

(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case; or

(2) any right to payment arising from a right to an equitable remedy for breach of performance.

(d) Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

(e)(1) Notwithstanding subsections (a), (b), and (c) of this section and paragraph (2) of this subsection, the court shall disallow any claim for reimbursement or contribution of

der subsections (a), (b), and (c), claims are either deemed allowed, allowed after notice and hearing, or estimated for purposes of allowance respectively. Subsection (d) disallows the claim of a party who has received an avoidable preference or failed to turnover property of the estate. Subsection (e) disallows claims by co-debtors, sureties, and guarantors to the extent the claim of the creditor is disallowed. Both subsections are inapplicable to the IRS claim. Various factual circumstances are set forth in subsections (f) through (i) relating to involuntary cases, rejection of executory contracts, claims arising from the recovery of property, and post-petition tax claims. Again, these sections which refer to the allowance of a claim under subsections (a), (b) or (c) and the disallowance of a claim under subsections (d) or (e) are not relevant to this case. Subsection (j) provides for the reconsideration of claims which have been allowed or disallowed.

The debtor asserts that the IRS claim is disallowed under section 502(a) because it was untimely filed under section 501 and Bankruptcy Rule 3002. In essence, the debtor contends that the claim is disallowed under section 502 because it was not allowed under Rule 3002. In order for the IRS claim to be "disallowed under section 502," the claim must be disallowed under subsection (d) or (e). Since the claim is not one of a co-debtor, surety or guarantor, and the IRS is not a party who has received a preference or failed to turnover property belonging to the estate, there is no basis to disallow the claim under section 502.

The IRS claim, therefore, is not "disallowed under section 502," but rather, it is not allowed because of the time limits set

an entity that is liable with the debtor on, or has secured, the claim of a creditor, to the extent that—

(A) such creditor's claim against the estate is disallowed;

(B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution; or

(C) such entity asserts a right of subrogation to the rights of such creditor under section 509 of this title.

(2) A claim for reimbursement or contribution of such an entity that becomes fixed after the commencement of the case shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) of this section, the same as if such claim had become fixed before the date of the filing of the petition.

(f) In an involuntary case, a claim arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee and the order for relief shall be determined as of the date such claim arises, and shall be allowed under subsection (a), (b), or (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

(g) A claim arising from the rejection, under section 365 of this title or under a plan under chapter 9, 11, 12, or 13 of this title, of an executory contract or unexpired lease of the debtor that has not been assumed shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

(h) A claim arising from the recovery of property under section 522, 550, or 553 of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

(i) A claim that does not arise until after the commencement of the case for a tax entitled to priority under section 507(a)(7) of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

(j) A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case. Reconsideration of a claim under this subsection does not affect the validity of any payment or transfer from the estate made to a holder of an allowed claim on account of such allowed claim that is not reconsidered, but if a reconsidered claim is allowed and is of the same class as such holder's claim, such holder may not receive any additional payment or transfer from the estate on account of such holder's allowed claim until the holder of such reconsidered and allowed claim receives payment on account of such claim proportionate in value to that already received by such other holder. This subsection does not alter or modify the trustee's right to recover from a creditor any excess payment or transfer made to such creditor.

for filing the claim. Therefore, the requirement that the claim be "disallowed under section 502," which would result in the IRS claim being discharged upon the debtor's completion of her plan has not been met.

The debtor asserts that to discharge only those claims which are disallowed by section 502 and not those which are untimely filed would permit a creditor to purposely file a late claim and avoid a discharge while other creditors acting in good faith and according to the Rules would have the unpaid portion of their claims discharged. While this may conceivably be true, the debtor may ensure that the debt is discharged by providing for it in the plan. 11 U.S.C. section 1328(a). Further, if there is any doubt that the debt is "provided for by the plan," that is, that the debtor has provided that the debt receive at least the minimum required by law, the debtor may file a claim for the creditor who has not timely filed his claim. 11 U.S.C. section 501(c). Thus, the debtor has control over the situation and may be certain that the unpaid portion of the claim would be discharged upon completion of the plan.

### Was the IRS Claim Provided For By the Plan?

The alternative condition set forth in section 1328(a) which results in the discharge of the debt upon completion of the debtor's plan requires that the debt be "provided for by the plan." 11 U.S.C. section 1328(a).

Under section 1322, a Chapter 13 plan cannot be confirmed unless it provides for "the full payment, in deferred cash payments, of all claims entitled to priority under section 507." 11 U.S.C. section 1322(a)(2); *In re Driscoll*, 57 B.R. 322 (Bankr.W.D.Wis.1986). After objecting to the timeliness of the IRS claim, the debtor sought to strengthen her position by filing a Modified Plan which provided that the IRS would receive 100% of its "allowed claim." Thus, the debtor seeks to meet the condition of providing for the IRS debt in the plan so as to render the debt discharged upon completion of the plan.

The debtor relies on *In re Gregory*, 19 B.R. 668 (9th Cir. BAP 1982), which held that as to unsecured creditors the requirement that the debt be "provided for by the plan" is satisfied by a provision in the plan which specifies that no payments will be made on the claim. *Id.* at 670. Thus, the debtor was able to ensure that the unsecured debt would be discharged upon completion of the plan by simply stating that the unsecured creditors would receive nothing under the plan. *Id.*

■ This Court interprets "provided for by the plan" to mean that the plan must, at the very least, provide that the debt receives the treatment required by law. Unsecured creditors are not required to receive a dividend and thus a plan providing that they would receive nothing was sufficient to meet the condition set forth in section 1328(a) and discharge the debt in the *Gregory* case. However, section 1322(a)(2) requires that certain claims be paid in full in a Chapter 13 plan. Thus, with respect to such claims, this Court interprets the term "provided for by the plan" to mean provide for full payment in the plan as required by law.

■ Admittedly, under section 507, in order to obtain priority status, a claim must first be allowed. 11 U.S.C. section 507; *In re Richards*, 50 B.R. 339, 341 (E.D.Tenn. 1985). The debtor has argued, therefore, that the claims of the IRS are not priority claims because the proof of claim was not timely filed and cannot be allowed. Thus, the debtor asserts that since the IRS claim does not constitute a priority claim under section 507, the debtor's plan does not need to provide for full payment of the claim as would be required under section 1322(a)(2).

This Court believes that the debtor's analysis ignores the import of the words "entitled to" in section 1322(a)(2). That section states that the plan shall "provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim...." 11 U.S.C. section 1322(a)(2). For one to be "entitled to" something necessarily implies

that the object of entitlement has not yet been received. For example, if one is entitled to a payment, obviously she has not yet received the payment. The language employed in section 1322(a)(2) necessarily implies that the priority status under section 507 has not yet been attained. The holder of the claim (right to payment) must be entitled to the treatment afforded by section 507, which means that the debt must be of the amount and of the nature designated for priority treatment. This Court believes that Congress anticipated that such claims when properly determined as to amount and qualification would be allowed.

Had Congress intended the interpretation advanced by the debtor, it would have been unnecessary to employ the words "entitled to" in section 1322(a)(2). It would have been sufficient for Congress to specify in section 1322(a)(2) that "all claims allowed under section 507 be paid in full." As enacted, the word "allowed" is conspicuously absent from the code section.

The debtor also asserts that had Congress intended to provide that the tax claims would not be discharged upon completion of the plan, the tax claims would have been included with alimony, support, maintenance and long term debts specifically excepted from the Chapter 13 discharge. 11 U.S.C. section 1328(a)(1), (2). This argument is unpersuasive. By providing that the tax claim be paid in full through the plan under section 1322(a)(2), the entire debt should be paid by completion of the plan with the result that there would be no remaining debt to survive the Chapter 13 discharge. Therefore, it was unnecessary to include tax claims in the exceptions to discharge.

This Court is unable to reach the conclusion reached by other courts which have held that an untimely tax claim cannot participate in the plan and must be discharged upon completion of the plan. *In re Richards*, 50 B.R. 339 (E.D.Tenn.1985); *In re Rothman*, 76 B.R. 38 (Bankr.E.D.N.Y. 1987); *In re Hunt*, 59 B.R. 718 (Bankr.D. Maine 1986); *In re Goodwin*, 58 B.R. 75 (Bankr.D.Maine 1986). Congress provided

that absent the consent of the holder of the claim to different treatment, the Court is without authority to confirm a plan which provides the priority claimant with less than full payment on the "entitled" claim. It is unlikely that Congress would give the priority-type claims status which is so important as to require 100% payment and still intend that the claimant receive nothing on the claim if the proof of claim is filed as little as five days late.

For these reasons, the Court holds that the debtor cannot discharge the unsecured priority claims of the IRS by completion of the plan in its present form. This decision may possibly create administrative problems in the case at bar. If so, the Court believes those problems are best left to the ingenuity of counsel to rectify. Leniency will be extended to compensate for any prejudice caused by the Court's delay in this decision. Counsel for the IRS may present an order in conformance with this decision.