**In re Adam LEBER and
Eva Leber, Debtors.**

**Adam LEBER and Eva Leber, Plaintiffs,**

**v.**

**ILLINOIS DEPARTMENT OF
REVENUE, Defendant.**

**Bankruptcy No. 88 B 02845.
Adv. No. 91 A 00467.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Dec. 20, 1991.

Mary K. Schulz, McBride Baker & Coles, Chicago, Ill., for debtors, Adam Leber and Eva Leber.

James D. Newbold, Asst. Atty. Gen., Chicago, Ill., for Illinois Dept. of Revenue.

Craig Phelps, Chicago, Ill., Chapter 13 Standing Trustee.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes to be heard on cross motions for summary judgment filed by Adam Leber and Eva Leber (the "Debtors") and the Illinois Department of Revenue ("IDOR"). The Court holds that the underlying debt for which IDOR is pursuing Debtor, Adam Leber, has been discharged pursuant to 11 U.S.C. § 1328(a). IDOR, however, properly invoked sovereign immunity under the Eleventh Amendment of the United States Constitution which it has not waived under 11 U.S.C. § 106. Thus, neither party, as a matter of law, is entitled to all the relief sought. Because material issues of fact remain, both cross motions are denied.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I) and (O).

## II. UNDISPUTED FACTS AND BACKGROUND

The Debtors filed a voluntary Chapter 13 petition on February 24, 1988. Adam Leber was the sole owner of all the issued stock of Leber & Sons, Inc. (the "Corporation"), a now dissolved Illinois corporation which had previously filed a Chapter 7 petition on February 18, 1988. The Corporation filed a schedule of liabilities on March 11, 1988, listing IDOR as a creditor holding a disputed claim for various Illinois state taxes in the approximate aggregate amount of $4,969.94. The pendency of the Corporation's related Chapter 7 proceeding was referenced in the Debtors' Chapter 13 case. IDOR was not scheduled in the Debtors' case as a disputed creditor owed taxes. IDOR, however, was sent notice of the Debtors' case by the Bankruptcy Clerk's Office. Apparently, as a matter of local custom and practice, IDOR receives notices of all bankruptcy filings in this district and division from the Bankruptcy Clerk's Office.

That notice issued under date of April 25, 1988, notified IDOR of the initial section 341 meeting set to commence on May 24, 1988, and of the claims bar date of August 22, 1988. IDOR did not file a proof of claim or participate in the case. The Debt-

ors' plan was confirmed on the recommendation of the Chapter 13 trustee (the "Trustee") on July 19, 1988, and was fully consummated on or about July 12, 1989. The plan provided in relevant part: "[a]ll claims entitled to priority under 11 U.S.C. § 507 shall be paid in full in deferred cash payments unless holder of a particular claim agrees to a different treatment of such claim." After consummation of the plan, the Trustee's final report showed no payments had been made to IDOR because no proof of claim had been filed. After notice to all listed creditors, including IDOR, the Court held a hearing on the final report and account on August 22, 1989. Thereafter, the Court entered a discharge on that same date, pursuant to 11 U.S.C. § 1328(a).

On May 11, 1990, IDOR sent Debtor, Adam Leber, a "Notice of Appointment (sic)" by which it purported to assert an assessment for unpaid Illinois state sales taxes of $8,428.27. IDOR asserts that such notice ripened into a final assessment twenty days after issuance of same because Adam Leber failed to file a protest. He is claimed liable as a responsible corporate officer of the Corporation under Ill. Rev.Stat. ch. 120, para. 452½ (1989). IDOR asserts that upon the filing of the instant adversary proceeding on May 9, 1991, it withheld all further collection action pending the determination of the dischargeability of the subject taxes.

The Debtors contend that the underlying tax debt allegedly owed has been discharged under section 1328(a); that IDOR should be held in willful contempt for violation of the Court's discharge order; and they should be awarded their costs and reasonable attorneys' fees. IDOR argues that the discharge order does not cover the unscheduled debt, notwithstanding its actual notice of the Chapter 13 proceedings. IDOR therefore concludes it has not violated the Court's discharge order. IDOR further contends it has properly invoked sovereign immunity under the Eleventh Amendment to the United States Constitution, which it has not waived pursuant to 11 U.S.C. § 106.

## III. APPLICABLE STANDARDS

### A. *Summary Judgment*

In order to prevail on a motion for summary judgment, the movant must meet the statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 56(c) reads in part:

[T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact *and that the moving party is entitled to a judgment as a matter of law.*

Fed.R.Civ.P. 56(c) (emphasis added).

In 1986, the Supreme Court decided a trilogy of cases which encourage the use of summary judgment as a means to dispose of factually unsupported claims. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The primary purpose for granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute." *Farries v. Stanadyne/Chicago Div.,* 832 F.2d 374, 378 (7th Cir.1987), *quoting Wainwright Bank & Trust Co. v. Railroadmens Federal Sav. & Loan Asso.,* 806 F.2d 146, 149 (7th Cir.1986). The burden is on the moving party to show that no genuine issue of material fact is in dispute. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514; *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552; *Matsushita,* 475 U.S. at 585–586, 106 S.Ct. at 1355–56. There is no genuine issue for trial if the record, taken as a whole, does not lead a rational trier of fact to find for the non-moving party. *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–250, 106 S.Ct. at 2511 (citations omit-

ted); *see also Valley Liquors, Inc. v. Renfield Importers, Ltd.,* 822 F.2d 656, 659 (7th Cir.1987), *cert. denied,* 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987). The parties have filed cross motions for summary judgment. Each motion must be ruled on independently and all motions must be denied if there are genuine issues of material fact. *ITT Industrial Credit Co. v. D.S. America, Inc.,* 674 F.Supp. 1330, 1331 (N.D.Ill.1987).

All reasonable inferences to be drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Davis v. Chicago,* 841 F.2d 186, 189 (7th Cir.1988); *Marine Bank, Nat. Asso. v. Meat Counter, Inc.,* 826 F.2d 1577, 1579 (7th Cir.1987); *De Valk Lincoln Mercury, Inc. v. Ford Motor Co.,* 811 F.2d 326, 329 (7th Cir.1987); *Bartman v. Allis–Chalmers Corp.,* 799 F.2d 311, 312 (7th Cir.1986), *cert. denied,* 479 U.S. 1092, 107 S.Ct. 1304, 94 L.Ed.2d 160 (1987); *In re Calisoff,* 92 B.R. 346, 350–351 (Bankr. N.D.Ill.1988). Furthermore, the existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under the applicable law. *Donald v. Polk County,* 836 F.2d 376, 379 (7th Cir.1988); *Wallace v. Greer,* 821 F.2d 1274, 1276 (7th Cir.1987); *Egger v. Phillips,* 710 F.2d 292, 296 (7th Cir.1983) (en banc), *cert. denied,* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983).

Rule 56(d) provides for the situation when judgment is not rendered upon the whole case, but only a portion thereof. The relief sought pursuant to subsection d is styled partial summary judgment. Partial summary judgment is available only to dispose of one or more counts of the complaint in their entirety. *Commonwealth Ins. Co. v. O. Henry Tent & Awning Co.,* 266 F.2d 200, 201 (7th Cir.1959); *Biggins v. Oltmer Iron Works,* 154 F.2d 214, 216–217 (7th Cir.1946); *Quintana v. Byrd,* 669 F.Supp. 849, 850 (N.D.Ill.1987); *Arado v. General Fire Extinguisher Corp.,* 626 F.Supp. 506, 509 (N.D.Ill.1985); *Capitol Records, Inc. v. Progress Record Distributing, Inc.,* 106 F.R.D. 25, 28 (N.D.Ill. 1985); *In re Network 90°, Inc.,* 98 B.R. 821, 823 (Bankr.N.D.Ill.1989), *aff'd In re Network 90 Degree, Inc.,* 126 B.R. 990

(N.D.Ill.1991); *Strandell v. Jackson County,* 648 F.Supp. 126, 136 (S.D.Ill.1986). Rule 56(d) provides a method whereby a court can narrow issues and facts for trial after denying in whole or in part a motion properly brought under Rule 56. *Capitol Records,* 106 F.R.D. at 29.

Rule 12 of the General Rules of the United States District Court for the Northern District of Illinois, adopted by General Order of the Bankruptcy Court on May 6, 1986, requires that the party moving for summary judgment file a detailed statement of material facts as to which they contend there is no genuine issue. The statement must include specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the summary judgment relief sought. Rule 12 also requires that the party opposing the motion file a statement of material facts as to which there is a genuine issue. If the opposing party's Rule 12 statement fails to deny the facts set forth in the movant's statement, those facts will be deemed admitted. In the instant proceeding, both parties filed the requisite statements.

### B. *11 U.S.C. § 1328(a)*

■ The discharge of section 1328(a) applies to Chapter 13 debtors who complete their plans. That section provides as follows:

(a) As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of *all debts provided for by the plan* or disallowed under section 502 of this title, except any debt—

(1) provided for under section 1322(b)(5) of this title;

(2) of the kind specified in section 523(a)(5), 523(a)(8) or 523(a)(9) of this title; or;

(3) for restitution included in a sentence on the debtor's conviction of a crime.

11 U.S.C. § 1328(a) (emphasis added).

The broad Chapter 13 discharge granted the Debtors in 1989 pursuant to the provi-

sions of section 1328(a), is of all debts except alimony, maintenance, or support (section 523(a)(5)), and certain long-term obligations specifically provided for under the plan (section 1322(b)(5)). *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 430–431 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 142–143 (1978) U.S.Code Cong. & Admin.News 1978, p. 5787. The recent amendments to the Bankruptcy Code, promulgated in 1990, which amended section 1328(a) to add additional exceptions for debts covered by section 523(a)(8), (a)(9) and criminal restitution obligations, are not applicable *nor involved* in this matter.

In order to be discharged under section 1328(a), a debt must be "provided for" by the plan or disallowed under 11 U.S.C. § 502. IDOR argues that because it was not scheduled as a creditor, it was not effectively "provided for" in the Debtors' plan. The weight of authority favors the Debtors' contentions rather than IDOR's arguments. The Debtors cite *In re Gregory,* 705 F.2d 1118 (9th Cir.1983) which held that the phrase "provided for" requires that for a claim to become dischargeable, the plan must make a provision for it, deal with it, or refer to it. *Id.* at 1122; *Accord In re Vlavianos,* 71 B.R. 789, 792 (Bankr. W.D.Va.1986). *Gregory* is not completely on point because IDOR's claim against Adam Leber was really in the nature of a contingent and disputed unsecured priority tax claim under 11 U.S.C. § 507(a)(7), rather than an unsecured general claim. The definition of "claim" under 11 U.S.C. § 101(5)(A) includes such contingent claims. *Gregory,* however, contains instructive dicta for the proposition that: "[w]hatever is notice enough to excite attention and put the party on his guard and call for inquiry, is notice of everything to which such inquiry may have lead." *Id.* at 1123.

IDOR, in turn, cites and relies on *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) and *New York v. New York, New. Hampshire and Hartford Railroad Co.,* 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953). Both cases were decided under the provisions of the former Bankruptcy Act

and neither case involved issues presently raised under the Bankruptcy Code, particularly the scope and effect of the section 1328(a) discharge. Thus, the authorities cited by IDOR are inapposite, not controlling, and readily distinguishable.

Other persuasive views support the Debtors' argument. As one noted authority has stated: "[a]n unscheduled or improperly scheduled debt will be discharged if the creditor had either actual notice of the bankruptcy case in sufficient time to protect its interest, or if the creditor had actual knowledge that the case was pending in such time." 1 R. Ginsberg, *Bankruptcy: Text, Statutes, Rules,* § 11.-06[f][1] at 919 (1991 Supp.) n. 334 (collecting cases). As Judge Ginsberg has noted, the burden is on the debtor to show that the unscheduled creditor had actual knowledge or notice. *Id.* Another authority has stated: "[a]s long as the plan contains some provision describing the treatment of that debt, and no exception to the chapter 13 discharge applies, the debt is discharged." 5 *Collier on Bankruptcy* § 1328.01[1] at 1328–9 (15th ed. 1991) Collier's view has been followed in this district. *See In re Harvey,* 88 B.R. 863, 865 (Bankr.N.D.Ill.1988). A third leading authority has collected cases dealing with tax claims and Chapter 13 discharges, and has stated: "[i]f a creditor fails or refuses to timely file proof of a prepetition claim, the claim is discharged if the plan provided for payment of the claim had a proof of claim been filed." II Keith M. Lundin, *Chapter 13 Bankruptcy,* § 9.13 at 9–15 n. 36 (1990).

The closest case on point cited by Judge Lundin is *In re Ryan,* 78 B.R. 175 (Bankr. E.D.Tenn.1987). In *Ryan,* Judge Kelley stated in an extended discussion that an IRS claim for pre-petition taxes is "provided for" where the plan provides for full payment of priority unsecured claims, notwithstanding that the debtor did not schedule the IRS by name. *Id.* at 177–178. *Ryan* noted that the plan does not have to specifically name a governmental creditor in order to "provide for" the claim. *Id.* The debt will be discharged if the debtor completes the plan. *Id.* at 178. *Ryan* fur-

ther noted that the tax debt will be discharged if it is not paid as provided in the plan as a result of the creditors' failure to file a timely proof of claim. Discharge requires only that the debt be "provided for" in the plan and the debtor complete the plan. Actual payment of the debt as provided in the plan depends on the filing of a proof of claim which is the creditor's obligation. Judge Kelley logically noted that if the governmental taxing authority is not scheduled as a creditor and never received notice of the case, any pre-petition tax debt would not be discharged as not "provided for" in the plan. *Id.* at 183 (citation omitted).

The discussion in *Ryan* is particularly apt under the facts of this matter to answer this question: could IDOR get actual notice, but wait until the Debtors completed their plan and received the discharge, and then collect from either of them on the ground that the debt was not discharged because it was not a scheduled creditor? Common sense and the law requires all parties noticed to inquire about the case. Judge Kelley concluded, and the Court concurs, that if the creditor learns of the case before confirmation of the plan and before the time for filing claims has expired, the creditor cannot ignore the case. It must file a timely proof of claim to avoid discharge of the debt without payment. *Id.* at 182.

The only authority for the contrary is *In re Tomlan*, 88 B.R. 302 (Bankr.E.D.Wash. 1988). *Tomlan*, however, was reversed by the district court. 102 B.R. 790 (E.D.Wash. 1989). Moreover, the reasoning used by the bankruptcy court has been discredited by several other courts. *See In re Daniel*, 107 B.R. 798 (Bankr.N.D.Ga.1989); *In re Rothman*, 76 B.R. 38 (Bankr. E.D.N.Y.1987); *In re Goodwin*, 58 B.R. 75 (Bankr.D.Me.1986); *In re Richards*, 50 B.R. 339 (E.D.Tenn.1985).

As noted in *Ryan*, the logistical problems a tax creditor like IDOR faces by requiring a fast audit of the debtor's pre-petition returns, and action to file a protective proof of claim or move to extend the time to file a proof of claim, are available remedies to employ in those cases where IDOR may have a contingent claim against a corporate officer or other person potentially responsible for unpaid state taxes.

It is undisputed that IDOR had actual notice of the Debtors' Chapter 13 case in April 1988. It had ample time within which it could have filed its proof of claim before the August 1988 bar date. Instead, IDOR waited almost two years later after the Debtors received their discharge before asserting that Debtor, Adam Leber was liable for unpaid sales taxes, interest and penalty, which it did not apparently collect from the Chapter 7 estate of the Corporation. To effectively allow a tax creditor's claim to be held nondischargeable because, for whatever reason, the creditor failed to file a proof of claim or filed an untimely proof of claim, subverts the Chapter 13 process. It undermines the binding effect and finality of orders of confirmation entered pursuant to 11 U.S.C. § 1327, which bind both the debtor and all its creditors. Moreover, it is far too late for any attempted revocation of discharge under 11 U.S.C. § 1330, especially on these facts which do not lend support to invocation of the equitable tolling doctrine.

## C. THE DEBTORS' SECTION 362(h) ARGUMENT

■ The Debtors contend that IDOR's actions constitute a violation of 11 U.S.C. § 362(h). Although they do not seek punitive damages, they allege they are entitled to their attorneys' fees and costs under the authority of *In re Kuck*, 116 B.R. 821 (Bankr.S.D.Ala.1990). Neither *Kuck* nor section 362(h) are applicable or controlling. *Kuck* was a Chapter 7 case in which the debtor sought relief under section 362(h) for a state department's suspension of one debtor's driver's license, and a second debtor's automobile tag for failure to file an accident report. The remedy provided by section 362(h) applies in cases under any chapter where the automatic stay of section 362(a) is still in force and effect. Upon completion of the plan, as is the case at bar, however, the automatic stay is supplanted by the discharge injunction. *See*

11 U.S.C. §§ 362(c)(2)(C) and 524(a). Thus, *Kuck* and section 362(h) are inapposite.

■ What the Debtors really contend is that IDOR's actions constitute a willful violation of the order of discharge which provided in relevant part:

> 2. The discharge—
>
> (B) Operates as an injunction against the commencement or continuation of an action, the employment of process, or an act to collect, recover or offset any such debt as a personal liability of the debtor whether or not discharge of such debt is waived....

A material issue of fact not resolved by the parties submissions is whether IDOR's actions were willful. "Willful" in the context of stay violations is defined as a "deliberate and intentional act done with the knowledge that the act is in violation of the stay." *In re Forty–Eight Insulations, Inc.*, 54 B.R. 905, 909 (Bankr.N.D.Ill.1985); *see also In re Allen*, 83 B.R. 678, 681 (Bankr.E.D.Mo.1988); *In re Wagner*, 74 B.R. 898, 903 (Bankr.E.D.Pa.1987). The same scienter requirement applies to acts done in violation of a discharge injunction. *See Behrens v. Woodhaven Asso.*, 87 B.R. 971, 976 (Bankr.N.D.Ill.1988).

IDOR argues it has not violated the discharge injunction because the unscheduled debt was not "provided for" in the plan and hence was not discharged. It is undisputed that IDOR has taken no further action subsequent to its assessment notice to collect on this disputed claim, pending the determination of the dischargeability made herein. Thus, the Court is not prepared on the limited showing made at this stage of the proceedings to find that IDOR's actions constitute a willful violation of the Court's discharge order.

### D. FEDERAL RULE OF CIVIL PROCEDURE 65

■ Federal Rule of Civil Procedure 65, incorporated by reference in Federal Rule of Bankruptcy Procedure 7065, authorizes the Court to grant injunctive relief where appropriate. Court ordered injunctive relief, however, is an extraordinary and exceptional remedy, and should be discretely ordered. A party seeking a preliminary injunction bears the burden of establishing five requisite elements:

1) an inadequate remedy at law;

2) the plaintiff will suffer irreparable harm if the preliminary injunction is not issued;

3) the resultant harm if the preliminary injunction is not granted outweighs the harm the defendant will suffer if the injunction is granted;

4) a reasonable likelihood of prevailing on the merits; and

5) the injunction will not harm the public interest.

*See Ping v. National Education Asso.*, 870 F.2d 1369, 1371 (7th Cir.1989); *Baja Contractors, Inc. v. Chicago*, 830 F.2d 667, 675 (7th Cir.1987), *cert. denied*, 485 U.S. 993, 108 S.Ct. 1301, 99 L.Ed.2d 511 (1988); *Manbourne, Inc. v. Conrad*, 796 F.2d 884, 887 (7th Cir.1986); *Brunswick Corp. v. Jones*, 784 F.2d 271, 273–274 (7th Cir.1986); *American Hospital Supply Corp. v. Hospital Products, Ltd.*, 780 F.2d 589, 593–594 (7th Cir.1986); *Palmer v. Chicago*, 755 F.2d 560, 576 (7th Cir.1985).

With respect to the fourth element, a reasonable likelihood of prevailing on the merits, the Seventh Circuit has established the minimum threshold, namely that "plaintiff's chances are better than negligible." *Brunswick*, 784 F.2d at 271, *citing Omega Satellite Products Co. v. Indianapolis*, 694 F.2d 119, 123 (7th Cir.1982); *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 387 (7th Cir.1984); *A.J. Canfield Co. v. Vess Beverages, Inc.*, 796 F.2d 903, 906 (7th Cir.1986).

The balancing test regarding the fourth element was discussed in *Roland:*

> If the plaintiff does show some likelihood of success, the court must then determine how likely that success is, because this affects the balance of relative harms.... The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor. This is a most important principle, and one well supported by

cases in this and other circuits, and by scholarly commentary. (citations omitted).

*Roland*, 749 F.2d at 387; *see also Lawson Products, Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1433 (7th Cir.1986).

The *Lawson* court noted as a threshold matter that the movant must establish: 1) no adequate remedy at law; 2) some likelihood of success on the merits; and 3) a danger of irreparable harm. Once these elements have been demonstrated, the trial court must "somehow balance the nature and degree of the plaintiff's injury, the likelihood of prevailing at trial, the possible injury to the defendant if the injunction is granted, and the wild card that is the 'public interest' (citations omitted)." *Id.* at 1433.

■ Additional injunctive and the other relief is not properly entered at this stage of the proceedings. The Debtors have not met their burden under Rule 65. They have not established irreparable injury, nor that the relief sought in this matter is inadequate at law, notwithstanding that they have prevailed on the seminal issue and established more than a mere likelihood of success on the merits. Furthermore, any additional acts by IDOR to collect on the discharged debt from either Debtor, are subject to this Court's equitable powers under 11 U.S.C. § 105 to enter such other and further orders in aid of its discharge order. Thus, the issue of further equitable relief against IDOR is not ripe for determination and not proven at this stage of the proceedings.

## E. SOVEREIGN IMMUNITY

■ The Eleventh Amendment to the Constitution of the United States provides: "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign States." Essentially, the amendment provides that a state and its subdivisions and agencies are immune from damage claims. Section 106 of the Bankruptcy Code in turn provides:

(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.

11 U.S.C. § 106.

In interpreting this section, the Supreme Court in *Hoffman v. Connecticut Dept. of Income Maintenance*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989) stated: "[t]he language of § 106(a) carefully limits the waiver of sovereign immunity under that provision, requiring that the claim against the governmental unit arise out of the same transaction or occurrence as the governmental unit's claim." *Id.* at 101–102, 109 S.Ct. at 2822. As provided in *Hoffman*, section 106(a)–(c) contains narrow scopes of waivers of sovereign immunity. The issue presented in *Hoffman* was whether section 106(c) authorizes a bankruptcy court to issue a money judgment against a state that has not filed a proof of claim in the bankruptcy proceeding.

IDOR has asserted *Hoffman's* applicability in this case, and has asserted that it has not waived immunity, because it heretofore had not filed a proof of claim in the Debtors' case, nor had it participated or appeared before it was joined as a defendant in the instant adversary proceeding. The same transaction requirement does not appear to be met in this matter because the underlying claim by IDOR was against the

Corporation for its unpaid Illinois state sales taxes. IDOR's subsequent contention that Debtor, Adam Leber is liable as a responsible corporate officer for unpaid taxes, plus interest and penalties, does not meet the same transaction requirement. Moreover, section 106(a) is limited to claims against such governmental units that are property of the estate. Adam Leber's claim against IDOR is no longer property of the estate. The bankruptcy estate ceased to exist at the time the core Chapter 13 case was closed and the Debtors received their discharge.

*Hoffman* further discussed section 106(b) and noted: "[s]ubsection (b) likewise provides for a narrow waiver of sovereign immunity, with the amount of the offset limited to the value of the governmental unit's allowed claim." *Id.* at 102, 109 S.Ct. at 2822. Section 106(b) is inapplicable because no claim, timely or otherwise, was ever filed by IDOR in the Debtors' case, and as such, same was not allowed.

*Hoffman* additionally noted that nothing in section 106(c) provides a similar express authorization for monetary recovery from the states and that the language of section 106(c)(2) is more indicative of declaratory and injunctive relief than of monetary recovery. *Id.* The Supreme Court construed section 106 as not authorizing monetary recovery from the states. Hence, the Court stated: "[u]nder this construction of section 106(c), a State that files no proof of claim would be bound, like other creditors, by discharge of debts in bankruptcy, including unpaid taxes ... but would not be subjected to monetary recovery." *Id.* Thus, the Debtors' claim for attorneys' fees and costs which constitute money damages falls under section 106(c).

*Hoffman* discussed the effect of the "trigger words" contained in section 106(c)(1) which apply to provisions of Title 11 containing the words "creditor", "entity", or "governmental unit." Significantly, none of those trigger words are contained in section 1328(a). Thus, under *Hoffman* no argument can be sustained that section 106(c) operates to effectively waive IDOR's claimed sovereign immunity under the Eleventh Amendment. Therefore, the Court concludes that it lacks any authority under the statute or *Hoffman* to assess attorneys' fees or costs constituting money damages against IDOR.

### F.  ILL.REV.STAT. CH. 120, PARA. 452½ (1989)

IDOR claims that Adam Leber's liability individually arises under the provisions of Ill.Rev.Stat. ch. 120, para. 452½ (1989), which provides in relevant part:

> Any officer or employee of any corporation subject to the provisions of this Act who has the control, supervision or responsibility of filing returns and making payment of the amount of tax herein imposed ... and who wilfully fails to file such return or make such payment to the Department or wilfully attempts in any other manner to evade or defeat the tax shall be personally liable for a penalty equal to the total amount of tax unpaid by the corporation including interest and penalties thereon....

Ill.Rev.Stat. ch. 120, para. 452½ (1989).

The section further provides for initial determination by IDOR with specified procedures for protest and review of notice of penalty liability issued pursuant to the section. Personal liabilities of such officers or employees as provided therein survive the dissolution of the corporation. The section also provides that a limitation period be tolled under certain circumstances.

Several material issues of fact appear to be raised, but not resolved by the pleadings regarding the computation of the amount claimed owed by Adam Leber, and whether all Illinois procedures under the statute were followed. For example, the amount of $4,969.94 was scheduled by the Corporation in its case, in contrast to the amount of $8,428.20 contained in IDOR's assessment notice. Whatever the correct amount of the contingent and disputed tax claim may be, the Court holds that same has been effectively discharged pursuant to section 1328(a). IDOR is not liable for the Debtors' attorneys' fees or costs under its properly invoked sovereign immunity, which has not been waived.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby denies the parties' cross motions for summary judgment. Concurrently entered herewith will be a separate order setting this matter for a status and final pretrial conference.

This Opinion is to serve as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

See written Order.